UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA )
)
)
)
vs. )          DOCKET NO. 2:24-cr-00114-LEW
)
)
)
BRANDON PINARD )
)

DEFENDANT'S SENTENCING MEMORANDUM

Brandon Pinard is scheduled to be sentenced on February 12, 2025. He respectfully submits this Memorandum in support of a time served sentence with two years of supervised release to follow. The proposed sentence gives due recognition to Brandon's conduct and is sufficient but not greater than necessary to satisfy the goals of sentencing outlined in 18 U.S.C. §3553(a).

I.    INTRODUCTION

There are no outstanding objections to the guideline calculation reflected in the presentence report. According to the presentence report, the guideline range is 8-14 months.  Brandon has been in custody since May 8, 2024, which is just over nine months.

II.    HISTORY AND CHARACTERISTICS OF BRANDON PINARD

a.  Early Family Trauma and Loss.

Brandon's early childhood was profoundly impacted by the death of his father. Brandon doesn't have much information or many specific recollections about the first four years of his life when he was living with his biological parents. He recalls his father being sick. He remembers watching his father deteriorate. He remembers being prevented from saying goodbye to his dad. Unfortunately for Brandon, his father passed away and could not relay their earliest memories

1

together. He wasn't available to tell Brandon about when he took his first steps or said his first words. All his father's memories died with him when Brandon was four years old. Brandon would not have the benefit of the consistent male father figure in his life again. The loss of a parent at such a young age, and lack of emotional stability during his formative years has had lasting effects on Brandon's emotional and psychological wellbeing.

Brandon's biological mother is an alcoholic. Her addiction interfered with her ability to care for Brandon during his early childhood. Although Brandon recalled that his biological mother was loving and caring when she was sober, when she consumed alcohol, her ability to care for him deteriorated. In one incident her neglect led to Brandon burning his arm. With so much of her life clouded by alcohol, she has not been a reliable source of information or stability for Brandon. She has not been a mother that Brandon could turn to for comfort in times of difficulty. She led with unpredictability and unreliability. These early experiences of neglect and exposure to substance abuse created an unstable and unsafe environment for Brandon and forced him to be more independent than was developmentally appropriate.

Because of his biological mother's poor supervision and neglect, she lost custody of Brandon. He was placed in the care of Ms. Brennan, his father's former nurse. Brandon felt that that Ms. Brennan obtained custody "pretty quickly" and, while she ensured his basic needs—such as shelter, food, and safety—were met, their relationship remained distant and superficial. Brandon expressed feelings of loneliness and emotional neglect, despite Ms. Brennan's efforts to provide him with material necessities. He described how Ms. Brennan signed him up for extracurricular activities without consulting him about his interests and then failed to attend or support him during practices, matches, or performances. Ms. Brennan, on the other hand, characterized their

2

relationship differently, describing Brandon as a "bright kid" and as her little buddy. She acknowledged that their relationship has become more strained in recent years, particularly due to frustrations surrounding events in Brandon's life. Despite the differences in their perspectives, it is clear that Brandon's emotional needs were not fully met, which caused him to feel unsupported and isolated throughout his childhood.

Brandon's new reality at Ms. Brennan's home was further complicated by the presence of her biological son. Ms. Brennan's son was older than Brandon. Brandon remembers being bullied and abused by Ms. Brennan's son who exposed Brandon to drug use, was verbally abusive to Brandon, and who was physically aggressive with Brandon. Ms. Brennan's son later died from a drug overdose. The torment from Ms. Brennan's son added another layer of trauma to Brandon's already turbulent upbringing.

Despite Ms. Brennan's best efforts to help Brandon acclimate to life in her home, he felt like an outsider, like Ms. Brennan never truly understood him. After the tragic loss of his father and being removed from his biological mother, Brandon wanted to hold on to his own familial identity while Ms. Brennan wanted to engulf him in hers. Brandon recognizes her efforts and appreciates her. He feels like she can be overbearing but he also and knows that he needs her for support. These tensions and the complicated nature of their history together strains their relationship.

Brandon's childhood was unconventional and tragic. His only stable parent died when he was four years old.  Then, he was removed from the care of his biological mother due to substance use and neglect. He landed in the care of a woman who tried very hard to do the right things but who has never been able to fully see Brandon or support his emotional needs. Although Brandon

has participated sporadically in mental health counseling over the years, he has never had the opportunity to fully engage in therapeutic treatment to unpack his childhood traumas and to help him develop stronger coping mechanisms.

### b. A History of Depression and Emotional Difficulties

Brandon has a longstanding history of depression. He often feels listless, like he is drifting without purpose. He experiences general sadness, has low energy and struggles to get motivated. He will start counseling or a job and then lose interest or inspiration to go. These feeling have significantly impacted his ability to maintain consistent employment and develop deeper relationships with others. Brandon has had time while incarcerated to reflect on his traumatic upbringing, the incredibly complicated relationship he has with Ms. Brennan, and his emotions. He wants to participate in counseling so that he can process his trauma, develop insight into his patterns of behavior and learn to better manage within his environment. He recognizes that these issues are simply too big to work through on his own.

While incarcerated at the Strafford County Jail, Brandon put in multiple requests to get a mental health evaluation and to obtain counseling. Unfortunately, while in custody he was not able to get evaluated, receive monitoring by a mental health professional or receive psychiatric medication for his depression. When he did not receive a response to his requests he underwent an evaluation by a private practitioner. The purpose of the evaluation was to determine what, if any, mental health services Brandon needs going forward.

After evaluation, Dr. Dinsmore diagnosed Brandon with Persistent Depressive Disorder. PSR ⁋44.[1] This is a "chronic low-level depression that is not as severe but may be longer lasting

---

1 Dr. Dinsmore's report was provided to probation as part of the presentence interview process and should be available to the court, if necessary, through probation.

than major depressive disorder. *Id.* Dr. Dinsmore opined that Brandon's experience of low-level depression combined with a lack of any models for healthy attachments and coping, and traumatic upbringing has contributed to his current feelings of sadness, lack of purpose and his tendency toward anger and action without forethought. *Id.*  Importantly though, he does not ruminate about his experiences and doesn't have an overly negative worldview. PSR ₱43.

After evaluating Brandon, Dr. Dinsmore made recommendations for both treatment in custody and treatment upon release. She opined that "in the custodial setting Mr. Pinard is at risk for decompensation of his depression and related difficulties managing his environment." PSR ₱45. After describing the custodial care she recommended, she made suggestions to follow upon Brandon's release to the community. She provided contact information for two specific mental health practices as well as two databases Brandon can use to locate a provider. She recommended that after he establishes care, he applies for services through the New Hampshire Department of Health and Human services where he will be assigned a caseworker and have a larger network of support for his mental health and ongoing care, if accepted. Brandon will, no doubt also receive assistance in finding an appropriate provider from his supervising officer. For his part, Brandon is looking forward to benefiting from mental health counseling and treatment. He wants to address his emotional difficulties in a structured therapeutic environment as recommended by Dr. Dinsmore.

From early parental neglect and to the trauma of familial loss, emotional isolation, and abuse, Brandon's upbringing was marked by instability and hardship. These experiences, combined with his ongoing struggles with Persistent Depressive Disorder and emotional difficulties, make it clear that mental health treatment is needed.  The best way for Brandon to

receive the support he needs to address these underlying issues and improve his ability to engage with life in a more meaningful way is for him to follow Dr. Dinsmore's recommendation for treatment providers outside of the custodial setting which has not provided the mental health care he needs.

### III.    A SENTENCE TIME SERVED FOLLOWED BY SUPERVED RELEASE SATISFIES THE REQUIREMENTS OF SECTION 3553.

#### a.    Brandon's personal history and characteristics support a sentence at the low end of the guideline range.

The Supreme Court instructs that a court is unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007). In this case, Brandon's history and characteristics described above provide important context to the offense. His unusual history supports a sentence at the low end of the guidelines.

#### b.    Nature, circumstances, and seriousness of the offense.

Brandon recognizes the seriousness of his offense. He lied on a federal form while attempting to purchase a firearm. He accepted responsibility for his actions, and he accepted the prosecution version of the offense. During his interview with Probation, he reaffirmed his acceptance of responsibility. PSR ¶14. Beyond that, he expressed his remorse for his actions and showed insight into how his actions impacted other people. *Id.*

#### c.    Respect for the law.

The government's prosecution of Brandon will certainly, by itself, promote respect for the

6

law. There is no doubt that this case will be a general deterrent for those who may be inclined lie on the form 4473. Brandon understands that this court will impose a sentence including additional incarceration and that his sentence will certainly include a period of supervised release. Brandon understands that he is the only person who put himself in this situation and that he must accept responsibility.

### d. Just punishment for the offense.

A sentence that is at the low end of the guideline range will result in a significant sanction for Brandon. Fortunately, Brandon did not actually obtain a firearm. Because no firearm was obtained, it was not used in another crime. He did not attempt to purchase multiple firearms. He did not solicit anyone else to purchase a firearm for him. Given where Brandon's offense falls on the spectrum of serious offenses and his willingness to participate in mental health treatment, just punishment does not require a sentence beyond nine months.

### e. Deterrence.

In terms of specific deterrence, a time served sentence is more than sufficiently harsh. Up until this point, Brandon's longest period of incarceration was 30 days. A nine-month sentence is more than is nine times the longest period he has ever served. A clear message has been sent to Brandon and it is one that he has received. Brandon is doing as much as he can while incarcerated to address his underlying issues. He put in requests for mental health treatment, he underwent a private diagnostic evaluation, he has completed at least 36 programs including an online Anger Management course, and he is participating in a group Anger Management class. He knows that he has work to do and a long road ahead.

### f. Protection of the public.

Brandon understands that part of the issue in this case is that the attempted firearm purchase came on the heels of his termination from employment. Although Brandon didn't view returning his uniform and badge as inappropriate, he understands how his behavior on the day he was terminated was interpreted by his employer. When looking at Brandon's criminal history, it is important to note that none of his prior convictions were for firearms related offenses. None of his convictions involved violence with weapons. He has had no disciplinary infractions while at the Strafford County Jail.   He is hopeful that he will be able to enter counseling shortly after he begins supervised release. Protection from the public will be appropriately secured by a time served sentence with supervised release conditions requiring mental health treatment.

## IV.     CONCLUSION

We ask the Court to sentence Brandon time served with two years of supervised release. Such a sentence is severe enough to command respect for the seriousness of the offense and to act as a deterrent to Brandon and those who might be similarly situated. At the same time, the recommended sentence is a responsible one that is "sufficient but no greater than necessary" to comply with the sentencing directives.


DATED: February 5, 2025                    */s/ Caleigh S. Milton*_____
                                           Caleigh S. Milton
                                           Attorney for Defendant
                                           Assistant Federal Defender
                                           P.O. Box 595
                                           Portland, Me 04112-0595
                                           207-553-7070
                                           FAX: 553-7017
                                           caleigh_milton@fd.org

**CERTIFICATE OF SERVICE**

I, Caleigh S. Milton, attorney for Brandon Pinard, hereby certify that I have served electronically, a copy of the within **DEFENDANT'S SENTENCING MEMORANDUM** upon Assistant United States Attorney Johnathan Nathans via the ECF system.


DATE:February 5, 2025                              */s/ Caleigh S. Milton*
                                                   Caleigh S. Milton